## CHARLES STEARNS *vs.* BENJAMIN WOODBURY.

A town, at its first settlement, set apart and appropriated, for a burying ground, a trac. of land bounded westerly on Connecticut River, and a part of said tract was used for that purpose, and was under the charge and oversight of the town until 1696, when the first parish in the town became a separate organization, and assumed, and ever afterwards had, the exclusive possession and charge of the burying ground : About the year 1780, the parish made provision for fencing the burying ground, and erected, about the year 1800, a fence on the top of the bank of the river : That part of said tract, which constituted the shore and bank of the river, being unsuitable for a burying place, was never used as such, and the parish, in 1842, conveyed it to A. : B. afterwards entered thereon, by license of the town, and A. brought an action of trespass against him. *Held*, that parol evidence was not admissible to prove that the shore and bank of the river were known as part of the burying ground, without first proving the loss of the record of the laying out thereof; that said shore and bank could not be considered as appurtenant to the burying ground ; that the appropriation of the land, for the purpose of a burying ground, was not a donation to the use of the parish ; that the parish had no title to said shore and bank, nor any possession thereof; and that A. could not maintain his action.

TRESPASS for breaking and entering the plaintiff's close. The defendant filed a specification of defence, in which he

alleged that he entered upon said close by license from the inhabitants of the town of Springfield, and that the title to the close was in said inhabitants.    The trial was in the court of common pleas, before *Merrick,* J. who signed the following bill of exceptions :

" The plaintiff claimed the *locus in quo* under a deed, which he gave in evidence, from the inhabitants of the first parish in Springfield, dated May 20th 1842.    He also offered evidence tending to show that the *locus* was part of a tract of land bounding westerly on Connecticut River, formerly belonging to the inhabitants of the town of Springfield, and that, at an early period, a portion of said tract was set apart and appropriated, by the town, as a burying ground, (now called *the South Burying Ground,*) and continued to be used and occupied for that purpose, up to and at the time when the first or territorial parish became a separate organization.    The *locus* was the part of said tract which constituted the shore and bank of said river, between high and low water mark, at the west end of the tract.

" There was no evidence that the *locus* had ever been actually used by the town or parish for the purposes of burial, it being unsuitable therefor, on account of exposure to the action of the river, the bank having been, to some extent, affected and carried away by freshets.    It appeared that, for more than forty years past, a fence, built by the parish, on the top of the bank, had intervened between said *locus* and the space actually occupied for burials.    But it did not appear at what time the fence there was first erected, though there was evidence tending to show, that the parish had made provision for fencing the burial ground more than sixty years since.    There was no evidence that any title had been acquired by the parish, by any conveyance, or by any adverse possession, besides their possession and occupation of that portion of the whole tract which was used and appropriated for a burying ground.

" The plaintiff also offered evidence tending to show that when said portion of said tract was first set apart as aforesaid,

the town, and the parish now known as the first parish, were identical, and that the parochial and municipal concerns of the town were then managed in the name of the town; that during or about the year 1696, by reason of the organization of a distinct parish in other parts of the town, the parochial property and concerns of the town passed into the hands and under the control of the first parish aforesaid, which succeeded to all the parochial property of the town; that up to the time when the town and the first parish became separate organizations, the town had charge and oversight of the said burying ground; and that, after said separation, the town took no further charge of the same, nor asserted any claim thereto; and that the said parish assumed and had the exclusive possession, charge and oversight of the same, from that to the present time.

" The plaintiff contended, that whatever tract of land should appear to have been devoted by the town for the purpose of burial, and to have been known as the burial lot, at the time when said separation took place, passed to said parish, on such separation, as parochial property.    But the court ruled, that said tract of land, set apart and appropriated by the town, as aforesaid, as a burial ground, was not parochial property, and did not pass as such, by operation of law, to the said first parish, upon its separation from the town and its organization as aforesaid.

" The plaintiff further contended, that if the evidence satisfied the jury that the lot set apart by the town was mutually treated by the town and parish as parochial property, at the time of the separation, and thenceforward, that fact would be conclusive against the right of the town now to claim and hold the same as municipal property.    But the court ruled, that the town originally held the said tract, set apart and appropriated for burying ground, in its municipal capacity; and that, however the title to the same may have been mutually considered and treated by the town and parish, it still remained the property of the town, until the town lost title thereto by absolute conveyance, or by adverse and peaceable

3 *

possession for a period of twenty years; and that the title acquired by the parish, by such adverse and peaceable possession, extended to so much only of said tract as said parish had actual possession of. And the court further ruled, that to show a valid title in the parish, against the inhabitants of the town, it must appear either that it had title by conveyance, or by an adverse and peaceable possession for a term of twenty years; and that its possession of so much of said tract as was used and appropriated for a burying ground, was not a fact, under the circumstances before mentioned, from which its seizin of the *locus* could be rightfully inferred by the jury."

A verdict was returned for the defendant, and the plaintiff alleged exceptions to the said several rulings.

*Davis & H. Morris*, for the plaintiff.

*R. A. Chapman & Ashmun*, for the defendant.

WILDE, J. Upon the evidence reported, it appears to the court very clear that this action cannot be maintained. The plaintiff neither produced nor offered any evidence sufficient to prove a title in him to the *locus in quo*, either by possession or otherwise. He proved, it is true, that a tract of land, including the *locus*, was conveyed to him by a deed from the first parish in Springfield; but there was no evidence to prove that the parish ever had any title to or possession of the premises. It was proved that the *locus* was a part of a tract of land bounding westerly on Connecticut River, formerly belonging to the town of Springfield, and that, at an early period, a portion of the said tract was set apart and appropriated by the town as a burying ground, and had been long occupied as such; but no evidence was offered by the plaintiff, tending to prove that the *locus* was included in the burying ground. It was proved that the burying ground had been long enclosed by a fence, and that the *locus* was not within the enclosure.

The plaintiff offered evidence to prove that the *locus* was known as part of the burying ground. But it is very clear that the limits of the burying yard could not be established by such evidence, unless it was first proved that the

record of the laying out of the burying yard had been lost. The evidence of reputation, even as to ancient acts and doings, is inadmissible, unless it is first made to appear that no better evidence can be obtained.   Nor can the bank or space between the river and the fence be considered as appurtenant to the burying ground, as the plaintiff's counsel have argued. And in the second place, if the *locus* was included within the limits of the burying ground, we are of opinion that the plaintiff has failed to prove any title to the bank or space between the westerly fence and the river.   It has been argued that the appropriation of the land by the town, for the purposes of a burying ground, must be considered as a donation or appropriation to the use of the parish.   And the cases of *First Parish in Shrewsbury* v. *Smith*, 14 Pick. 297, and *First Parish in Medford* v. *Inhabitants of Medford*, 21 Pick. 199, were cited in support of the argument.   But those cases differ from the present, in a material circumstance.   In both of them, the burying grounds were included within the lots appropriated for the purpose of building thereon ; and it was held that such an appropriation might vest a title to the whole lot, or that the possession by the parish would be sufficient to enable them to maintain trespass against a stranger, as was decided in the former of those cases.   In the latter case, it was decided, and we think correctly, that such an appropriation by the town of Medford of a lot, for the purpose of building a meeting-house thereon, was an appropriation of the land, by the corporation, to its own use as a parish ; in other words, to a parochial use.

It is obvious, therefore, that neither of those cases is applicable to the plaintiff's claim in the present case.   In those cases, it was decided that the burying grounds were the property of the parishes, not because they were more appropriate to parochial than to municipal purposes and uses, but because they were laid out on lands appropriated or dedicated to the uses of the parishes.   In the present case, there is no evidence of any such appropriation or dedication.

Then, as to possession, there is no evidence that the plaintiff

or the parish had ever had any possession, actual or constructive, except within the burying yard enclosure ; and even of that the parish and the town had a mixed possession, which might entitle either to maintain trespass against a stranger. But certainly the parish had no title to support any action against the town, or against any one claiming under the town.

If the parish had entered under a title adverse to that of the town, they might, perhaps, have acquired a title by disseizin ; but of this it is not necessary to express any decided opinion.    Upon the facts reported, they clearly have acquired no such title, nor indeed any title, as against the town, or against the defendant, if he entered by license from the town.

*Exceptions overruled.*